FAMILY FINANCE, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71339. Filed September 14, 1959.

*Donald R. Wellford, Esq.*, and *Lauch M. Magruder, Jr., Esq.*, for petitioner.

*George L. Hudspeth, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in income tax of petitioner for the fiscal years ended November 30, 1953, 1954, and 1955, in the amounts of $11,100.55, $16,124.23, and $22,433.53, respectively.

The sole issue is whether amounts which a financial institution, discounting petitioner's paper, credited during the years in issue on its books to the reserve account of petitioner, on an accrual basis of accounting, are excludible from taxable income of the petitioner in each of those years.

FINDINGS OF FACT.

Some of the facts are stipulated and are found accordingly.

Petitioner is a Tennessee corporation with its principal place of business in Memphis, and during the years involved it kept its books and filed its income tax returns on a fiscal year basis ended November 30, on an accrual basis of accounting. During the years here involved said returns were filed with the district director of internal revenue at Nashville.

Petitioner was engaged in the business of a loan broker at two offices in Memphis. It entered into an arrangement with Industrial Finance & Thrift Corporation of New Orleans, hereinafter called

Industrial, evidenced by a written agreement, whereby Industrial would furnish the money for making loans to petitioner's customers. This agreement specifically provided Industrial would withhold 2 per cent of the face amount of each loan and credit the same to a reserve account in the name of petitioner.

Petitioner did all of the detail work with respect to making the loans to customers. Each note was made payable to Industrial or bearer, executed by the customer in an amount sufficient to cover the net amount the customer wanted to borrow, plus sums sufficient to cover all interest, insurance premiums or other charges, and a brokerage fee for petitioner in an amount ranging from 6 to 15 per cent, depending upon the duration of the loan. Most of the loans were secured by chattel mortgages. Petitioner unconditionally endorsed all notes.

The notes were submitted daily to Industrial by petitioner and if Industrial accepted them it would furnish cash to petitioner for the loans, withholding, however, in accordance with the agreement, 2 per cent of the face amount of each note and crediting same to petitioner's reserve account. This reserve account was governed by petitioner's agreement with Industrial which provided, in part, as follows:

(a) Industrial Finance & Thrift Corporation may charge against such reserve any notes, conditional sales contracts, commercial paper or other instruments purchased by Industrial Finance & Thrift Corporation which become and remain delinquent for 90 days or more according to the respective original terms of such instruments.

(b) Unless modified by mutual agreement in the meantime, this reserve account shall continue and no part of same shall be withdrawn without the written consent of Industrial Finance & Thrift Corporation until the reserve account shall exceed 10% of the balances then outstanding on all such paper or instruments handled by Industrial Finance & Thrift Corporation. Any excess above 10% of such balances outstanding may be drawn by you on June 1st of each year during the life of this agreement, provided you have given Industrial Finance & Thrift Corporation 60 days' written notice prior to said respective June 1st of your desires and demand for such payment to you.

(c) Upon termination of this agreement and when all papers and instruments handled hereunder have been liquidated in full and all amounts due under same have been paid in full, any balance remaining in such above reserve account shall be paid to you, upon your written demand therefor.

The bookkeeping steps followed by petitioner relative to its loan brokerage income may be demonstrated in the following manner. On a given day, for example, one or both of petitioner's offices may have had customers who executed notes in the total face amount of $1,536. The data with respect to the notes and the notes themselves would be transmitted to Industrial Finance, and Industrial, if it accepted the paper, would provide cash to petitioner to cover the loans. Petitioner would then record on its books entries as follows:

|  | Debits | Credits |
|---|---|---|
| Cash received | $1, 305. 72 | |
| Contingent reserve (2 per cent of the face amount of the notes) | 30. 72 | |
| Cash to customers (Net after all interest, insurance, and brokerage commissions were deducted) | | $1, 135. 89 |
| Brokerage commissions | | 182. 91 |
| Recording fees or notary fees | | 9. 00 |
| Health and accident premiums, accounts payable | | 8. 64 |

The difference in the $1,305.72 cash received by petitioner and the $1,536 face amount of the notes, or $230.28, represents the interest due on the notes, additional insurance, and the 2 per cent reserve withheld by Industrial Finance and credited on its books to the favor of petitioner. At the end of each taxable accounting period, the petitioner reduced the total credits to its brokerage commission account (the $182.91 credit in the example above) by the amount debited to its contingent reserve account (the $30.72 debit in the example above), and only the difference in such totals was reported as taxable income during the years here involved.

During the years here involved, the balances and yearly increases in the reserve account credited on the books of Industrial to the account of petitioner were as follows:

| Balance, Nov. 30— | 61 North 3d St. office | 161 Madison Ave. office | Total yearly increase |
|---|---|---|---|
| 1952 | $30, 713. 32 | 0 | 0 |
| 1953 | 42, 966. 49 | $950. 76 | $13, 204. 93 |
| 1954 | 50, 605. 25 | 8, 031. 94 | 14, 719. 94 |
| 1955 | 50, 597. 93 | 19, 947. 21 | 11, 907. 95 |

Petitioner, during all the years here concerned, excluded from accruable income the yearly increases in the reserve account maintained for it by Industrial.

Respondent determined the amounts of $13,204.93, $14,719.94, and $11,907.95, representing yearly increases in the credits to petitioner's reserve account by Industrial during the fiscal years ended November 30, 1953, 1954, and 1955, respectively, should not be excluded from taxable income of petitioner in those respective years.

OPINION.

Petitioner contends that the sums withheld from its brokerage commissions and credited to the reserve are not properly accruable in the year the amounts were credited to the reserve account because payment of same by Industrial was so restricted under their agreement as to render ultimate receipt by the petitioner uncertain and indefinite. Petitioner urges that the credits to the reserve should be excluded from taxable income to it until they become absolutely payable under the agreement or the moneys are actually received.

It is respondent's position that the yearly increases in the reserve should not be excluded from accruable income to the petitioner in the years of increase, on the theory the amounts are income to petitioner when credited to its reserve account by Industrial.

The case is ruled by *Commissioner* v. *Hansen*, 360 U.S. 446, decided after the trial of the instant case. There the Supreme Court held an automobile dealer received accrued income from credits to his reserve account by the financial institution that discounted the dealer's paper.

The only difference between the instant case and the *Hansen* case is that the *Hansen* case and the *Glover* and *Baird* cases decided in that opinion all involved dealers who sold cars or trailers on installment contracts which they sold or assigned to the finance company that maintained the dealer's reserve account. The factual difference is immaterial. A study of the *Hansen* opinion, holding credits to the dealer's reserve account are accrued income to the dealers, when made, shows that the basis for the conclusion is that when the credits were made to the dealer's reserve account "the dealers acquired a fixed right to receive the amounts so retained by the finance companies."

In the *Hansen* case it was argued that in substance it was the dealer's customer and not the dealer who obtained the loan from the finance company. A somewhat similar argument is made here: that the petitioner's customer is the actual borrower from Industrial. But the question is as to the ownership of the retained percentages in the reserve accounts. In the *Hansen* case, the Court held:

It is therefore clear that the retained percentages of the purchase price of the installment paper, from the time they were entered on the books of the finance companies as liabilities to the respective dealers, were vested in and belonged to the respective dealers, subject only to their several pledges thereof to the respective finance companies as collateral security for the payment of their then contingent liabilities to the finance companies.

The same must be said of the instant case. It is perfectly clear that petitioner was the owner of the reserve account subject only to the pledge of the reserve account as collateral security for the payment of paper petitioner had unconditionally endorsed.

It is true that in the *Hansen* case the notes were made out to the dealers and later assigned or endorsed to the finance companies while here the notes were not made out to petitioner. But the notes in the instant case were made out to Industrial or bearer and the significant thing is that they were all unconditionally endorsed by petitioner before being sent to Industrial. This factual difference is immaterial.

Petitioner's final argument, that its right to ever receive the funds in the reserve account was subject to contingencies that could not be known in the year of credit, and hence it did not acquire a fixed right to receive the amounts withheld, is the same argument advanced in the *Hansen* case. There the Court pointed out the dealers had a right

to receive in the future, the amounts withheld, either in the form of cash or as payment of the dealer's obligation to the finance company on the paper it had endorsed. The same is true here. Industrial was obligated to pay the amounts withheld to petitioner either in the form of cash or, as petitioner had authorized in the agreement, in satisfaction of petitioner's obligation to Industrial.

We hold for respondent upon the issue presented. Because of certain concessions by both parties,

*Decision will be entered under Rule 50.*